

FILED
IN THIS OFFICE

JUL 2 4 2025

Clerk U.S. District Court
Greensboro, NC
BY_____

# UNITED STATES DISTRICT COURT

for the

District of Middle District of North Carolina

Division Greensboro Division

Case No. **1:25CV659**

*(to be filled in by the Clerk's Office)*

|  |  |
|---|---|
| John Edward Griffith IV | ) |
| | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Uber Technologies Inc. | ) |
| | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names. Do not include addresses here.)* | |

Jury Trial: *(check one)* ☐ Yes ☐ No
☐

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non−Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Page of 8

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | John Edward Griffith IV |
| Address | 207 Sandbar Circle APT 3F |

| Greensboro | NC | 27406 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Guilford |
| Telephone Number | 9107259986 |
| E-Mail Address | johngriff07@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Uber Technologies Inc. |
| Job or Title *(if known)* | CT Corporation System |
| | 160 Mine Lake Ct. Suite 200 |

| Raleigh | NC | 27615 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Wake County |
| Telephone Number | 9198217139 |
| E-Mail Address *(if known)* | |

☐  Individual capacity          ☐  Official capacity

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Address | |

| | | |
|---|---|---|
| *City* | *State* | *Zip Code* |

County

Telephone Number

E-Mail Address *(if known)*

☐ Individual capacity        ☐ Official capacity

Defendant No. 3

    Name

    Job or Title *(if known)*

    Address

|  |  |  |
|---|---|---|
| *City* | *State* | *Zip Code* |

    County

    Telephone Number

    E-Mail Address *(if known)*

☐ Individual capacity        ☐ Official capacity

Defendant No. 4

    Name

    Job or Title *(if known)*

    Address

|  |  |  |
|---|---|---|
| *City* | *State* | *Zip Code* |

    County

    Telephone Number

    E-Mail Address *(if known)*

☐ Individual capacity        ☐ Official capacity

## II.  Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☐ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

_____

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

_____

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

_____

## III.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

Nationwide (initial rollout in Los Angeles, San Francisco, and Detroit), including North Carolina where I drive for Uber.

_____

B. What date and approximate time did the events giving rise to your claim(s) occur?

Announced publicly by Uber on July 23, 2025. Scheduled for U.S. rollout beginning August 2025

_____

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

On July 23, 2025, Uber Technologies, Inc. publicly announced a new rider preference feature that allows female-identifying passengers to request not to be matched with male drivers. This policy is set to roll out in major U.S. cities beginning August 2025.

As a male driver actively using Uber's platform, I am directly affected by this policy. Under this system, riders are granted the unilateral ability to exclude me from earning income based solely on my sex. This feature does not rely on individual safety ratings, past interactions, or driver behavior—it is a blanket filter that applies to me and every other male driver, regardless of conduct, performance, or complaint history.

Uber's stated justification is rider "comfort" and "safety." But the root cause of platform-based misconduct lies in Uber's failure to implement adequate driver vetting procedures—not the presence of male drivers themselves. This policy does not solve that failure. It merely punishes male drivers collectively, branding us as threats without cause, without process, and without recourse.

By preemptively labeling me and others as unsafe based solely on sex, Uber has damaged my professional reputation, reduced my access to labor opportunities, and imposed stigma without due process. This is not a rider preference. This is corporate cowardice wrapped in algorithmic discrimination.

## IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

I have not sustained physical injuries, but I have experienced emotional distress and reputational harm as a result of being classified as unsafe or untrustworthy solely based on my gender. This policy negatively impacts my dignity, mental well-being, and standing as a professional driver. I have not sought medical treatment at this time.

## V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

## Relief

Plaintiff is requesting **$250,000 in total grossed-up damages** for the harm that will be caused by Uber's discriminatory rider preference policy, which allows users to exclude male drivers based solely on gender. This policy, once implemented, will negatively impact Plaintiff's ability to earn income, damage his professional reputation by labeling him as unsafe without cause, and cause emotional distress by treating him as a threat in the absence of any misconduct.

These damages are based on:

- Anticipated loss of current and future income opportunities due to exclusion from rider pools based on gender

- Reputational harm from being subjected to a system that implies dangerousness without justification

- Emotional distress caused by Uber's decision to implement a policy that punishes drivers for the company's own failure to vet applicants properly

- Punitive damages for Uber's reckless disregard for fair labor access and for deploying a blanket policy that stigmatizes innocent drivers

- The requested amount is **grossed-up** to account for the potential tax impact and ensure the full compensatory value is realized by Plaintiff

Plaintiff is not seeking damages due to a specific termination or employment action, but rather for **structural harm** caused by **algorithmic exclusion based on gender**, which constitutes a form of civil rights violation and reputational injury under federal question jurisdiction.

---

## Injunctive Relief

Plaintiff further requests that the Court:

1. **Prohibit Uber from launching or continuing any rider preference feature that filters or excludes drivers based on gender,** unless it is directly tied to individualized safety records or verified rider complaints.

2. **Order Uber to revise its driver onboarding procedures within 90 days of the Court's order.** Uber shall implement a structured, behavior-based screening process for all new drivers. This process must include situational judgment assessments designed to evaluate:

    o Driver ethics

    o Conflict de-escalation ability

    o Alignment with platform safety standards

3. The scoring system must:

    o Be standardized and evidence-based

Page of 8

- o  Contain **defined behavioral thresholds** for approval

- o  Be subject to **external review or third-party validation**

- o  **Not allow universal passage** or be performative in nature. A system that fails to meaningfully distinguish high- and low-risk applicants will be deemed **noncompliant**.

4. **Require Uber to submit a written compliance report within 120 days**, detailing implementation, scoring thresholds, and third-party validation to demonstrate that the new system is operational and effective.

5. **Order Uber to launch a public-facing safety and equity awareness campaign within 150 days** of the Court's order. The campaign must:

   - o  Publicly acknowledge the retirement of the gender-based rider preference feature

   - o  Emphasize investment in behavior-based safety screening

   - o  Reassure users that driver eligibility is based on **measurable conduct**, not identity

   - o  Be distributed through Uber's website, app, and major social media channels for **at least 30 consecutive days**

   - o  Be documented with **proof of launch and platform visibility** filed with the Court

6. **Anchor this process in documented need.** Uber's own U.S. Safety Report disclosed **3,824 sexual assault and severe misconduct incidents** during the 2019–2020 period (attached as **Exhibit 1**). This underscores the need to vet for individual risk—**not assign it collectively to gender**. A behaviorally grounded screening system will protect riders, restore public trust, and shield innocent male drivers from generalized stigma.

---

## Additional Relief Clauses

- **Plaintiff reserves the right to seek additional damages** should discovery reveal broader harm, internal misconduct, or concealed practices that heighten the discriminatory or negligent nature of Uber's actions.

- **Plaintiff also reserves the right to pursue this case as a class action** if discovery reveals that similarly situated drivers have been subject to the same policy and experienced comparable harm. If warranted, Plaintiff will seek leave to amend the complaint to certify a class under **Rule 23 of the Federal Rules of Civil Procedure**.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    _07/24/2025_

Signature of Plaintiff

Printed Name of Plaintiff    _John E Griffith_

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Address    _____

_____

_City_         _State_      _Zip Code_

Telephone Number    _____

E-mail Address    _____

Page  of  8

# Exhibit 1

**Uber U.S. Safety Report (2019–2020)**

**Submitted in Support of Plaintiff's Request for Injunctive Relief**

---

This document, published by Uber Technologies, Inc., is Uber's own official safety report covering the period of 2019–2020. It discloses that during this time, there were:

- **3,824 incidents** of sexual assault or severe misconduct involving drivers and passengers

- Numerous additional reports of unsafe or inappropriate behavior while using the Uber platform

This exhibit is significant because it **confirms that Uber has long been aware of systemic safety issues on its platform,** particularly related to sexual assault. Rather than implementing a structured, behavior-based onboarding process to screen for risk factors among prospective drivers, Uber has instead chosen to deploy a **blanket gender-based filtering policy** that excludes male drivers from ride assignments without regard to individual conduct or history.

Plaintiff offers this report not only as **factual background**, but also as **evidence of Uber's institutional failure to enact meaningful safeguards**. The report supports Plaintiff's argument that Uber's new rider preference policy unfairly and unlawfully **shifts the burden of its own negligence onto male drivers**, branding them as inherent threats based solely on gender.

This data underscores the urgent need for the injunctive relief sought in this complaint—namely, a **mandatory, behavioral screening process for all new drivers**, and the retirement of identity-based exclusion policies that do not address root causes of safety risk.

Exhibit 1                    Uber's U.S. Safety Report

Share

f

y

✉

•••

In December 2019, Uber became the first in our industry to proactively release a comprehensive U.S. Safety Report detailing our safety-related policies and processes, as well as data on the most serious safety incidents reported on our platform.

The report, validated by third-party experts, was part of Uber's larger efforts to drive a new approach to safety in the rideshare industry and set a new standard for corporate transparency.

Since then, no one could have predicted how drastically the world and everyone's lives would change. A global pandemic. A racial reckoning. A complete shift in how we work. Everything we knew to be true was turned upside down in ways that were both challenging and thought-provoking.

Despite the extreme impact of the pandemic on our business, Uber remained steadfast in following through on the safety commitments we had made—and building on them—by:

- Pioneering innovative safety features in the app such as Text-to-911, On-Trip Reporting and Seat Belt Alerts.

- Creating the Industry Sharing Safety Program with Lyft to share driver account deactivation information related to serious safety incidents with Lyft and other platforms.

- Establishing the Uber Survivor Resources Hotline & Fund administered by experts from RAINN.

- Developing and deploying safety education to drivers all over the country.

- Introducing new standards and mask verification technology to prioritize health and safety in the face of COVID-19.

Today we are delivering on yet another commitment by releasing our second U.S. Safety Report, with data that continues to show that the vast majority of trips on Uber–more than 99.9%–are

**Exhibit 1**  Uber's U.S. Safety Report

Today we are delivering on yet another commitment by releasing our second U.S. Safety Report, with data that continues to show that the vast majority of trips on Uber–more than 99.9%–are completed without any safety report at all. But we know that each incident included in this report affects a real person. Behind every data point is a personal experience, and sometimes pain and loss, that must be acknowledged. That's why we continue to invest in safety, building new features to help prevent incidents and challenging the entire industry to raise the safety bar.

Because this Safety Report covers the years 2019 and 2020, it reflects the impact of COVID-19 on our business and trends across the country. In early 2020, when COVID-19 began sweeping the globe, Uber encouraged users to stay home. Rides decreased as much as 80% as people limited their travel to essential trips.

Share





Although the impact of COVID-19 on sexual assault generally remains unclear, data from various federal sources shows a significant increase in violent crime during the pandemic, including murder, which according to the CDC increased nearly 30% in 2020. Government data also revealed that 2020 was the deadliest year on American roads since 2007 as a result of a rise in risky behaviors such as drunk driving, speeding, and not wearing a seat belt. Uber's platform was not immune to those broader trends.

As our report shows, Uber received 3,824 reports across the five most severe categories of sexual assault and misconduct. Compared to the first Safety Report, which covered 2017 and 2018, the rate of sexual assault reported on the Uber app decreased by 38%.

Similar to our first report, Uber's motor vehicle fatality rate is still half the national average. Consistent with national trends, more than half of the motor vehicle fatalities highlighted in this report include at least one risky behavior, such as impairment or speeding—and 94% were related to third-party drivers. Third parties were also the accused party in the majority of physical assault fatalities.

Exhibit 1                                    Uber's U.S. Safety Report



to third-party drivers. Third parties were also the accused party in the majority of physical assault fatalities.

We have used the same clear principle to guide our transparency efforts and publication of this second safety report: secrecy doesn't make anyone safer. By sharing our safety record, we can help end the silence surrounding issues like gender-based violence that remain far too common in our society, and help improve safety for all.

We wouldn't be where we are today without the guidance and support of experts and advocacy groups. We are thankful for the opportunity to listen, to learn, and to partner with people from around the world. They continue to guide our safety journey and help us create many of the policies and processes we have in place today.

To be clear, disclosing our safety data doesn't mean Uber's platform is less safe—it means we're being more honest about the rare safety incidents that do occur. Most companies won't talk about these tough issues, but pretending they don't exist only leaves everyone less safe. So we hope stakeholders, regulators and others will recognize, support and encourage proactive transparency efforts—not blunt them.

We want Uber to be the safest way to go anywhere and get anything, and we'll continue to lead by taking an expert-driven, action-oriented, and transparent approach. And because safety should never be proprietary, we'll encourage others to be more open themselves and to work together to improve safety for our industry and beyond.

Share